UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| VALOR PERSONAL ASSISTANCE SERVICE, INC., <br>     Plaintiff, <br><br> vs. <br><br> BANK OF AMERICA N.A., <br>     Defendant. | § § § § § § § § § | No. 3:24-CV-00176-LS |

### PLAINTIFF'S AMENDED PETITION

COMES NOW Plaintiff, Valor Personal Assistance Service, Inc. ("Valor"), and files this Amended Petition against Defendant, Bank of America, N.A. ("BOA"), and alleges as follows:

### A.  PARTIES

1. Plaintiff, Valor Personal Assistance Service, Inc., is a corporation, doing business in El Paso County, Texas.

2. Bank of America, N.A., which is a North Carolina corporation, with its principal office at 401 North Tryon Street, Charlotte, North Carolina, 28255; it can be served through its registered agent at C T Corporation System, 1999 Bryan St. Ste. 900, Dallas, Texas 75201-3136.

### B.  JURISDICTION

3. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332: the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### C.  VENUE

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in El Paso, Texas.

### D.  FACTS

5. Valor maintained business checking and savings accounts at BOA, governed by BOA's Business Deposit Account Agreement ("BDA"). The BDA promises to "protect your deposited funds

against unauthorized transactions and to implement commercially reasonable security procedures."

6. Valor also executed BOA's CashPro Service Agreement ("CashPro SA"), which:

    a. designates CashPro ACH as the sole platform for initiating bulk transfers,

    b. requires BOA to authenticate each outbound payment order using dual-factor out-of-band verification, and

    c. permits BOA, upon notice of suspected fraud, to "immediately block or reverse "any pending payment.

7. Both contracts obligate BOA to comply with Tex. Bus. & Com. Code §§ 4A.201–212, NACHA Operating Rules, and the FFIEC Authentication Supplement, each of which sets minimum standards for detecting and stopping impersonation-based account takeovers.

8. **Initial "Fraud-Alert "Contact:** At 11:04 a.m. on Thursday, October 20, 2022, Valor's administrator received BOA's automated text claiming a bitcoin purchase on a corporate debit card and asking the recipient to reply "1" or "2."   Valor denied the charge.

9. Minutes later, "Dorothy Owens," purporting to be a BOA branch supervisor, called from 915-231-2970. Owens already knew Valor's account names, last-four debit-card digits, and internal contact list.

10. **The CashPro Impersonation:** Soon thereafter, "Samuel Norris" telephoned Valor's ACH administrator, Jesus ("Jesse") Gonzalez, from 800-441-7160 and 915-221-8314—numbers listed for BOA's CashPro help-desk.

11. Norris possessed Gonzalez's full legal name, cell number, birth date, and the last four digits of his Social Security number.

12. Claiming an urgent malware threat, Norris instructed Gonzalez to download "security software." Valor's contracted IT technician installed a program while Norris remained on the line.

13. Before terminating the call, Norris told Gonzalez that CashPro access would be "temporarily suspended for security review," concealing the fact that he—and not Valor—now controlled the platform.

14. **Unauthorized Transfers:** During the early hours of Friday, October 21, 2022, the impostors logged in through CashPro, transferred approximately $690,000 from Valor's savings to checking, and released two outbound ACH credit files:

| Batch | Timestamp | Amount | Destination account (last 4) | Narrative |
|---|---|---|---|---|
| 1 | 09:11 a.m. | $441,213.34 | 9478 | "Payroll Adjust. " |
| 2 | 09:14 a.m. | $128,299.32 | 6621 | "Vendor Settlement " |

15. At 3:05 p.m. an employee alerted Gonzalez that her personal account reflected an unexpected deposit, signaling an unauthorized batch release.

16. Gonzalez immediately drove to BOA's Mesa Street branch, requested that all Valor accounts be frozen, and asked branch staff to telephone the ACH Fraud Department. BOA representatives Nyree Falkner and Zina Khrimyan confirmed one batch could still be reversed but refused to initiate a reversal, stating "the transaction must first post."

17. Branch associate Flor L.N.U. noted that Falkner never authenticated the call—contrary to BOA policy—and expressed confusion that a reversal was not being processed before the nightly cutoff.

18. Throughout the weekend, Gonzalez repeatedly phoned BOA's toll-free numbers; each representative disclaimed authority, claimed they could not locate CashPro personnel, or instructed Valor to "just claim it as a loss."

19. On Sunday, October 23, 2022, Gonzalez reached CashPro's Tokyo desk, which confirmed the account had been "unlocked" remotely and provided internal trace numbers, proving BOA had full visibility into the fraudulent batches yet still failed to issue reversals.

20. **BOA's Post-Notice Inaction:** Even after receiving Valor's in-person freeze request, multiple telephone reports, and an IC3/FBI complaint number, BOA did not:

    a. validate Valor's identity through dual-factor callback,

    b. suspend CashPro credentials,

    c. invoke the contractual "reverse or recall" mechanism, or

    d. notify intermediary banks.

21. As a direct result, $569,512.66 left Valor's checking account and settled irretrievably into accounts controlled by the impostors.

22. Valor has suffered:

    a. the principal loss,

    b. internal remediation costs exceeding $75,000,

    c. contractual penalties for missed vendor payments,

    d. forensic-IT expenses, and

    e. reputational damage with state Medicaid payors.

### E. Count 1 — Negligence / Gross Negligence

23. BOA owed Valor a duty of ordinary care under common law and Tex. Bus. & Com. Code § 4.103, including a duty to implement commercially reasonable security, verify payment orders, and act promptly upon notice of suspected fraud.

24. BOA breached that duty by:

    a. disabling or bypassing its own dual-factor callbacks,

    b. honoring payment orders issued through obviously compromised credentials,

    c. refusing to recall transfers its staff admitted were fraudulent,

    d. failing to follow NACHA's "Same-Day Reversal" procedures, and

    e. instructing Valor to "claim it as a loss."

    f. These breaches proximately caused the $569,512.66 loss and other consequential damages.

25. BOA's conscious indifference to an "extreme degree of risk"—after real-time notice and with contractual power to reverse—constitutes gross negligence warranting exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a)(3).

### F. Count 2 — Violation of UCC Article 4A<br>(Tex. Bus. & Com. Code §§ 4A.202-212)

26. Valor accepted BOA's proposed security procedures only because BOA represented that they were commercially reasonable.

27. The impostors' orders were not "verified pursuant to an agreed-upon security procedure," rendering them unenforceable under § 4A.202(b).

28. Valor notified BOA of the error before settlement; BOA nevertheless failed to utilize Article 4A's recall powers.

29. Under § 4A, BOA bears the risk of loss because the beneficiary accounts were not those designated by Valor.

### G. Count 3 — Breach of Contract

30. The BDA and CashPro SA require BOA to: (a) maintain "commercially reasonable" security; (b) block or reverse unauthorized transfers upon notice; and (c) indemnify Valor for losses caused by BOA's failure to follow agreed procedures.

31. BOA breached these provisions by honoring the fraudulent payment orders and refusing timely reversal.

32. Valor performed all obligations under the agreements, including promptly reporting the fraud and maintaining required balances.

33. The breaches caused the losses described above. Valor seeks actual damages and attorney fees under Tex. Civ. Prac. & Rem. Code ch. 38.

### H. Count 4 — Breach of Fiduciary Duty

34. BOA's CashPro marketing materials and one-on-one "Treasury Management" consultations

induced Valor to repose special trust in BOA's expertise, giving BOA control over Valor's payroll and vendor disbursements.

35. That relationship imposed fiduciary duties of loyalty and full disclosure, which BOA breached by prioritizing internal convenience over Valor's security and by withholding trace information needed to retrieve the funds.

### I. Count 5 — Conversion (Special Deposit)

36. The $569,512.66 represented segregated Medicaid remittances and employee-withholding trust funds held for specific beneficiaries; Valor delivered those identifiable funds to BOA for the sole purpose of safekeeping and payroll disbursement, thereby creating a special deposit.

37. By debiting the account without authorization and refusing to restore the specific funds after demand, BOA wrongfully exercised dominion over property to which Valor had an immediate superior right.

### J. Count 6 — Vicarious Liability: Respondeat Superior & Ratification

38. BOA employees Falkner and Khrimyan accepted and processed the impostors' instructions within the scope of their employment; ad; and failed to halt and reverse the transactions upon demand.

39. After full knowledge of the fraud, BOA retained the benefit of the ACH fees and affirmed the employees' decisions, thereby ratifying the wrongful acts.

### K. Damages & Remedies

40. Valor seeks:

    a. Actual damages: at least $569,512.66 plus consequential and incidental losses;

    b. Exemplary damages: for gross negligence and malice;

    c. Pre- and post-judgment interest as allowed by law;

    d. Attorney fees and costs on the contract claim;

    e. Equitable relief ordering BOA to provide full trace data and cooperate in any future recovery actions; and

    f.  All other relief to which Valor is justly entitled.

## L. Jury Demand

41. Valor demands trial by jury on all issues so triable.

## PRAYER

42. For these reasons, Plaintiff asks that the Court issue citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

    a.  Actual damages;

    b.  Exemplary damages;

    c.  Prejudgment and postjudgment interest;

    d.  Court costs; and

    e.  All other relief to which Plaintiff is entitled.

Respectfully submitted,

Valenzuela Law Firm
701 Magoffin Avenue
El Paso, Texas 79901
T: (915) 209-2719
F: (915) 493-2404

By:   /s/ Felix Valenzuela
       State Bar No. 24076745
       felix@valenzuela-law.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing has been served upon all attorneys via CM/ECF, on April 29, 2025.

               /s/ Felix Valenzuela